# Brock, et al. *v.* Crawford.

May 10, 1954

No. 39234  64 Adv. S. 5  72 So. 2d 202

*Karl W. Kepper, Francis T. Zachary,* Hattiesburg, for appellants.

*Breed O. Mounger, J. M. Alford,* Tylertown, for appellee.

**LEE, J.**

This was a suit in the Chancery Court of Walthall County by Mrs. J. E. Brock, widow and administratrix of the Estate of J. E. Brock, Sr., Deceased, and the sons and daughter of the decedent against Dr. B. Lampton Crawford. The purpose of the suit was to effect the cancellation of a deed, dated August 6, 1941, from J. E.

Brock to Dr. Crawford which purported to convey Mr. Brock's interest in 795 acres of land, and to require an accounting for timber cut and removed therefrom. It was charged that Mr. Brock and Dr. Crawford were co-tenants; that a fiduciary relationship existed between them; and that the deed in question was forged. The answer was a full and complete denial of all of the material allegations of the bill of complaint. At the conclusion of the evidence, the court entered a decree which adjudged that the complainants have no interest in the land. From the dismissal of their bill, the complainants appealed.

The evidence for the complainants showed that, while Mr. Brock and Dr. Crawford were good friends, they had never had any business association until their purchase of 995 acres of land on January 6, 1936. Subsequently they sold about 200 acres of the tract. Mr. Brock died on July 21, 1946. On October 24, 1946, Dr. Crawford recorded a deed dated August 6, 1941, to himself from Mr. Brock by which the land in question was conveyed. The complainants introduced a letter dated December 5, 1940, from Dr. Crawford in which he sought to sell to Mr. Brock his interest in the land which they owned jointly. They also introduced another letter, dated either October 1, 1941, or October 1, 1943, in which Dr. Crawford said "if you will make the deed to the land, I am in position to pay you for it now." A number of cancelled checks, drawn by Mr. Brock in his lifetime, were introduced for comparison with the signature on the original deed. Mrs. J. E. Brock and L. P. Brock testified that, after the death of their husband and father, they asserted their interest in the land to Dr. Crawford, and that he offered to give them $300 or $400 for a quitclaim deed. They had never heard of any sale of the land by the decedent in his lifetime.

Viewing, in a reasonable manner, the effect of the evidence for the complainants, it must be said that it was

weak for the following reasons: (1) It is not unreason-
able that the decedent sold the land without the knowl-
edge of members of his family. (2) The witnesses did
not testify that Dr. Crawford admitted that the decedent
owned a half interest in the land. They simply said that
he wanted to get a quitclaim deed from them. L. P.
Brock admitted that Dr. Crawford was claiming the land
at the time. ▆▆ Now it is common knowledge that peo-
ple often obtain quitclaim deeds even when the grantors
therein have no title whatever, the purpose being to allay
even suspicion concerning the title. (3) The signatures
on the cancelled checks and on the original deed possess
great similarity. It does not take a handwriting expert
to point out the likeness in most of the letters. The only
substantial difference is that the signature on the checks
has a flourish—a line from the "k" to the left, across
the signature, and thence to the right again across the
signature, whereas the flourish is absent in the signature
on the deed. It is not uncommon for some people to make
use of distinguishing marks. Such persons, in using an
extraordinary mark in their signatures to checks, are no
doubt motivated by the desire to prevent the forgery of
their signatures and the withdrawal of their funds. (4)
The letter of October 1, 1941, or October 1, 1943, in no
way identified the land there mentioned as that in which
the parties were jointly interested. Besides, Mrs. Brock,
on cross-examination, in effect admitted that Dr. Craw-
ford did negotiate with her husband about the purchase
of the 80 acres of land, which was later sold to Emmett
Hewitt. (5) In the letter of December 5, 1940, Dr. Craw-
ford informed Mr. Brock that, because of financial obli-
gations, it was necessary for him to sell something, and
he was wondering "if you might not be in shape to take
our mutual investment over and *pay me what I have in
it. I feel sure you could handle it to better advantage
that way.*" (Emphasis supplied.) In the original pur-
chase of the 995 acres, the deed recited a consideration

of $497.50. Hence the conduct of Dr. Crawford, in that particular, negatived the contention that he desired or attempted to take an undue advantage of Mr. Brock.

J. M. Alford, the attorney who prepared the deed in question, was called as a witness for the defendant. He testified that he drafted the deed at the instance of Mr. Brock, who furnished the description and called it off as the lawyer wrote on the typewriter. Besides, he saw Mr. Brock deliver the deed to Dr. Crawford and receive a check for $500, which, according to his testimony, was the true consideration. This witness was not even cross-examined. Miss Celia Yarbrough, the notary public whose name appeared on the deed, testified that she took Mr. Brock's acknowledgment and signed her name and put her notarial seal on the deed. She was neither related to nor connected with the defendant in any way. Paul Mangum, cashier of the Tylertown Bank, testified that, on August 7, 1941, a check dated August 6, 1941, drawn on his bank by Dr. Crawford in favor of J. E. Brock, and endorsed by Mr. Brock, was charged to Dr. Crawford's account, and was credited to the account of J. E. Brock.

Hence, if human testimony is to be believed, undoubtedly J. E. Brock, for an actual consideration of $500, on August 6, 1941, executed and delivered the deed in question to Dr. Crawford, and, on the next day, collected the amount of the check which was given in payment of the consideration.

Notwithstanding the testimony of the above named three witnesses constituted a complete defense to this suit, the defendant himself, over the strenuous objection of the complainants, testified in explanation of his delay in recording the deed to the effect that he mislaid it, and it was only after some question arose as to Roy Hill's title, as a result of talk by the complainants, that he found the deed and put it on record; that he did not offer the Brocks $300 or $400 for a deed or quitclaim;

that the letter of October 1, 1941, or October 1, 1943, had reference to adjacent land; that he received the deed on August 6, 1941; that the actual consideration was $500 instead of $10 as recited in the deed; that he gave his check for $500 on the Tylertown Bank and it was paid, but he lost it; and that he was in no fiduciary relationship with Mr. Brock.

The recordation of the deed and the conversation with the Brocks occurred after the death of the decedent. Consequently it was not error to admit his testimony in explanation of his delay, and in denial of the evidence of the Brocks that he offered $300 or $400 for a quitclaim deed. The worth of the letter of October 1, 1941, or October 1, 1943, was so inconsequential as evidence, that the defendant's testimony thereon may be said to have been harmless.

The rest of Dr. Crawford's testimony, however, was in direct violation of Section 1690, Code of 1942. The statute is clear. So many cases have construed it that error ought no longer result in its application. The error here was palpable, and ordinarily such error would require a reversal of the cause.

However, the Court is faced with this situation: If the appellants' objection to the testimony of Dr. Crawford had been sustained and the court had decided the case in favor of the appellants, such a decision would have been so manifestly wrong that this Court would have had no other alternative than to reverse and render a judgment here for the opposite party. So, notwithstanding the manifest error in the admission of the testimony, as above mentioned, the record in this case, excluding such inadmissible evidence, permits no other result than that which was reached.

The cause is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.